```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Sandra Hockler,                    :

      Plaintiff,           :      Case No. 2:12-cv-209

   v.                              :      JUDGE EDMUND A. SARGUS, JR.
                                                  Magistrate Judge Kemp
Innovative American
Manufacturing, Inc., et al.,       :

      Defendants.          :

## REPORT AND RECOMMENDATION

This is a case about a deferred compensation plan.  The parties do not appear to dispute its existence, but, for jurisdictional purposes, disagree about its nature.  Defendant Innovative American Manufacturing, Inc. (IAM), which (along with the other named defendants) removed the case to this Court under 28 U.S.C. §1441(b), claims that the plan is a "top hat" plan and that the obligations of the parties to such a plan are enforceable only under the terms of ERISA.  Were that so, all of the state law claims which Plaintiff Sandra Hockler has pleaded would be converted to federal law claims, and this Court would have jurisdiction over the case.

Naturally, Ms. Hockler has a different view of the jurisdictional situation.  She filed her case in the Franklin County Court of Common Pleas, and wants to litigate it there. According to her motion to remand, the plan in question is not really a "plan" at all, but simply an arrangement under which IAM agreed to pay deferred compensation to her late husband, Norman Hockler.  While she certainly believes the arrangement to be legally enforceable, she argues that it is not an ERISA plan, that ERISA regulations relating to funding, the appointment of plan administrators, the existence of fiduciary duties, and the like, do not apply here, and, most significantly, neither do

ERISA's enforcement provisions.

The Court's jurisdiction hinges upon which party has the better of this argument. The motion to remand has been referred to the Magistrate Judge for a Report and Recommendation. For the reasons which follow, it is recommended that the motion to remand be denied.

I.

It is not difficult to state the basic facts relating to the plan or the relevant procedural history of the case. The latter appear on the Court's docket; the former can be pieced together from the pleadings and an affidavit filed as part of IAM's memorandum in opposition to remand.

Procedurally, on February 13, 2012, Ms. Hockler filed a ten-count complaint in the Franklin County Court of Common Pleas against IAM, another company called Refrigeration Systems Co., and two individuals, Thomas A. Leighty and Robert A. Appleton, who are alleged to own and operate both IAM and Refrigeration Systems Co. The first eight counts all relate to IAM's promise to pay some amount of deferred compensation to Mr. Hockler, who was, before his retirement in 2008, the president of IAM. Each of the first eight counts pleads a claim under either Ohio common law, such as breach of contract, or Ohio statutory law, such as O.R.C. §4113.15, which mandates the prompt payment of fringe benefits to employees. Counts nine and ten (which IAM does not contend are preempted by ERISA) relate to IAM's continued commercial use of Mr. Hockler's name after his retirement.

On March 8, 2012, the defendants removed the case to this Court, citing 28 U.S.C. §1441(b) as authority to do so. It is IAM's position that all eight of the claims relating to the deferred compensation agreement are completely preempted by ERISA, and that because they are, by virtue of that preemption, claims arising under federal law, this Court has federal question

jurisdiction under 28 U.S.C. §1331.  The motion to remand was filed a month later, and is now fully briefed.

As far as the "plan" or agreement is concerned, both parties cite to the same provisions which appear to define IAM's obligation to Mr. Hockler (and now to his estate, represented by his wife).  Exhibit Two to the complaint describes a "Special Compensation Package" which was created for Mr. Hockler.  Part of that package is described as "Deferred Compensation."  For the first five years of IAM's operation, the amount of the deferred compensation is a fixed percentage (different for each of those years) of IAM's "Net Income Accrual."  For years "beyond" the first five, the amount of deferred compensation is set at .022 percent of the "Net Income Accrual."  Deferred compensation was also made subject to four conditions - that payments would last for ten years, that they would begin the year following Mr. Hockler's retirement, that there was five-year vesting period for the "program" (which could be waived in the event of disability or natural death), and that Mr. Hockler had to be working for IAM at the time of his retirement.  Mr. Appleton, who is an officer of IAM, signed an affidavit (Exhibit B to the memorandum in opposition, Doc. No. 13) which repeats this information.  His affidavit also states (and these statements are uncontradicted in the record) that the plan was unfunded, that Mr. Hockler was a "highly compensated employee of IAM," that the plan was intended to provide both deferred compensation and retirement income to Mr. Hockler, that Mr. Hockler was the only "participant" in the plan, and that the plan's existence was reported to the United States Department of Labor.  There are some other factual materials contained in the record (consisting mostly of some statements made by IAM's attorney, Kenneth R. Cookson, to the effect that the Deferred Compensation Package was "never designed to be part of ERISA," statements which IAM claims are

inadmissible because they were made during the parties' pre-suit efforts to settle the case), but, as the Court explains below, these statements have no impact on the legal question raised by the removal of the case and the subsequent motion to remand. Consequently, the jurisdictional issue will be decided based on the facts which the Court has just stated.

II.

In support of her motion to remand, Ms. Hockler makes two different arguments. First, she asserts that the deferred compensation arrangement between Mr. Hockler and IAM is not an ERISA plan of any shape, sort or description, so that any claims relating to that arrangement could not possibly be preempted by ERISA's remedy provisions. Second, she responds to IAM's argument that the arrangement is actually a "top hat" plan (a kind of ERISA plan that is designed for the benefit of a small number of highly-compensated company executives) by saying that it does not make any difference if the Court finds the arrangement to be such a plan. That is so, she argues, because "top hat" plans are, by statute, exempted from many of ERISA's requirements, and the scope of that exemption spills over into the preemption arena; in her words, "it was Congress' intent that any plan that is not subject to fiduciary standards should not be subject to ERISA complete preemption." Motion to Remand, Doc. No. 9, at 16. The Court will address these arguments in reverse order.

A. <u>Are "Top Hat" Plans Subject to ERISA Complete Preemption?</u>

Ms. Hockler's argument that state law claims brought for the purpose of obtaining benefits allegedly due under "top hat" plans are not completely preempted by ERISA's remedy provisions is based almost entirely on a single Supreme Court decision, <u>Fort Halifax Packing Co. v. Coyne</u>, 482 U.S. 1 (1987). Before beginning an analysis of that decision and its relationship to

the jurisdictional issue in this case, it is helpful to review some of the statutory law relating to "top hat" plans.

Assuming that a particular employee benefit plan meets the definition of a "top hat" plan (which, according to 29 U.S.C. §§1051(2), 1081(3), and 1101(a)(1), is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees"), issues arise about the extent to which ERISA - which was primarily designed to establish rules for plans covering the typical employee, as opposed to the highly compensated management employee - applies and governs the administration of such a plan. The three different sections of ERISA which are cited above and which provide the definition of a "top hat" plan all do so in the context of language which states that "[t]his part shall apply to any employee benefit plan ... *other than*" a "top hat" plan (and to certain other types of arrangements as well which are not relevant to this case)(emphasis supplied). The effect of this language is to exempt "top hat" plans "from ERISA's vesting, participation, funding, and fiduciary rules." In re New England Mut. Life Ins. Co. Sales Practices Litigation, 324 F.Supp.2d 288, 309 (D. Mass. 2004). It does not appear that IAM disputes this point.

What, however, does this broad exemption from certain requirements of ERISA mean as far as enforcement is concerned? According to Ms. Hockler, it means that any method chosen by the beneficiary of a "top hat" plan to assert a claim for benefits is also exempt from ERISA's requirements. That is, Ms. Hockler claims, state law remedies otherwise available to such a participant are not completely preempted by ERISA and thereby converted into federal law claims. This is so, she says, because of the way in which the Fort Halifax decision characterized the intent and effect of ERISA.

In Fort Halifax, the Supreme Court was faced with the question of whether a statute under which the Maine Director of the Bureau of Labor Standards (a Maine state agency) brought suit to enforce the provisions of Maine's severance pay law was preempted by either ERISA or the NLRA. That, obviously, is not the same question involved in this case, nor does it deal with the type of complete preemption which IAM argues for here, but rather with whether the Maine courts should have recognized preemption as a defense to the state court action - a somewhat different concept. Nevertheless, Ms. Hockler claims that the language used by the Supreme Court in support of its finding that ERISA did not preempt the Maine statute in question should persuade this Court to reject IAM's preemption argument here.

The primary basis for the Supreme Court's decision on the ERISA question was the language of ERISA itself, which, as the Court noted, exhibited a Congressional intent "to legislate with respect to plans rather than to benefits ...." Fort Halifax, 482 U.S. at 8. Consequently, while it was accurate to say that Maine's severance pay statute related to an employee benefit - namely, severance pay - it did not relate to an employee benefit plan. This, the Court said, was "a formidable obstacle to appellant's argument." Id.

The Court did not end its analysis there, however. As a "second answer" to the question, the Court focused on the fact that "pre-emption of the Maine statute would not further the purpose of ERISA pre-emption." Id. The Court analyzed the legislative history behind ERISA and found evidence that preemption was intended to prevent employers who established employee benefit plans, thereby subjecting themselves to "a host of obligations" imposed by ERISA, not be forced at the same time to comply with "differing regulatory requirements in differing States." Id. at 9. As examples, the Court pointed to State

regulations relating to record-keeping, claims processing, and fiduciary standards, all of which could conflict with ERISA - a result at odds with the need to ensure "that the administrative practices of a benefit plan will be governed by only a single set of regulations."  Id. at 10.  Since the Maine statute relating to severance pay imposed no administrative requirements at all, but simply mandated a single lump-sum payment to employees under certain circumstances, which obligation could be satisfied by "do[ing] little more than writ[ing] a check," it did not create the type of conflict which motivated Congress to adopt the broad preemption provisions found in ERISA, and it was therefore not preempted.

Building on this alternate rationale, Ms. Hockler has constructed the following argument.  First, she notes that due to the various provisions of ERISA which exempt "top hat" plans from a multitude of its requirements, there is really no administrative scheme with which any state regulations or the allowance of state-law-based legal claims would conflict.  Second, she reads Fort Halifax as implying, if not directly holding, that Congress intended that "any plan that is not subject to fiduciary standards should not be subject to ERISA complete preemption."  Motion to Remand, at 16.  Thus, because to preempt her state law claims would neither serve any useful purpose in terms of relieving IAM from having to comply with conflicting sets of regulations, nor further Congress' intent when it provided for preemption under certain circumstances, this Court should find that her claims are not preempted.  She makes that argument even though, should the Court label the deferred compensation arrangement involved in this case as an ERISA "top hat" plan, all of her state law claims are claims made by a beneficiary of an ERISA plan to obtain benefits from the plan.

As a policy argument, Ms. Hockler's contentions might carry

some weight.  However, as in most cases which involve construing legislative enactments, the Court cannot begin its analysis by attempting to ferret out from the legislative history what policies would be served by various interpretations of the statutory scheme.  Rather, the Court must start with the language that actually made it into the final draft of the statute, and presume that if the language is clear, that language - and not any debate which preceded it - expresses the will of Congress. In other words, "it is elementary that '[t]he starting point in every case involving construction of a statute is the language itself.'" Southeastern Community College v. Davis, 442 U.S. 397, 405 (1979), quoting Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756 (1975)(Powell, J., concurring).  It is only when "the literal language of the statute does not conclusively reveal legislative intent [that] courts must look beyond literal meaning" to matters such as the underlying policy concerns which prompted Congress to act.  See In re Arnett, 731 F.2d 358, 361 (6th Cir. 1984).

What does ERISA have to say on this subject? A good place to begin answering this question is the Supreme Court's decision in Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987), the case in which the "complete preemption" doctrine was first applied to ERISA.

In Metropolitan Life Ins. Co. v. Taylor, the Supreme Court was faced with the now-familiar scenario of a beneficiary of an employee benefit plan (there, a disability benefits plan) suing his employer and claiming that, as a matter of state law, benefits owed to him pursuant to the plan were improperly withheld.  The Court of Appeals had concluded that the plaintiff's state law claims were preempted by ERISA, but were not replaced by a claim for benefits arising under that statute, so that the district court lacked jurisdiction to hear the case (like this case, it had been removed from state court on federal

question grounds, with the federal question being the ERISA-based claim for benefits that the plaintiff had never asserted).  The Supreme Court reversed part of that holding.  It agreed that because the state law claims for benefits related to an employee benefit plan, they were preempted by 29 U.S.C. §1144(a), which states that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...."  The Supreme Court went further, however, and concluded that based on Congress' intent, as expressed in 29 U.S.C. §1132(a), to make any claim for benefits under an ERISA plan exclusively federal in nature, state law claims like the ones pleaded in that case were "displaced" by ERISA's remedy section and converted into federal law claims.

29 U.S.C. §1132 is entitled "Civil Enforcement."  It describes both those persons "empowered to bring a civil action" and the type of actions which can be brought.  First among those is an action brought "by a participant or beneficiary," and the second-listed claim which a participant or beneficiary may bring is an action "to recover benefits due ... under the terms of [a] plan ...."  29 U.S.C. §1132(a)(1)(B).  Not only does §1132(a) permit such suits, however, but the Supreme Court, relying on legislative history stating that "[a]ll such actions in Federal or State courts are to be regarded as arising under the laws of the United States," concluded that it was Congress' clear intention, in enacting §1132(a), "to make causes of action within the scope of the civil enforcement provisions of §502(a) [29 U.S.C. §1132(a)] removable to federal court."  Metropolitan Life Ins. Co. v. Taylor, supra, at 66.  Obviously, this Court cannot reinterpret §1132(a) to mean something other than what the Supreme Court has said it means, no matter what policy arguments might favor some differing interpretation.

-9-

Once that groundwork has been laid, the application of §1132(a) to "top hats" plan is not complicated.  If, indeed, a plan qualifies as a "top hat" plan, it is an ERISA plan even if it has been exempted from substantial portions of ERISA.  As the Supreme Court held in <u>Fort Halifax</u>, ERISA applies to plans. Under the plain language of §1132(a), a suit brought by or on behalf of a beneficiary of a "top hat" plan to recover benefits due under the plan is an action "to recover benefits due ... under the terms of [a] plan" and therefore falls within the literal scope of that statutory provision.  Under the binding interpretation of §1132(a) laid out in <u>Metropolitan Life Ins. Co. v. Taylor</u>, any such claim, whether brought in state or federal court, and whether characterized as a federal or state law claim, "is necessarily federal in character by virtue of the clearly manifested intent of Congress.  It, therefore, 'arise[s] under the ... laws ... of the United States,' 28 U.S.C. § 1331, and is removable to federal court by the defendants, 28 U.S.C. §1441(b)."  <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. at 67.

Were this Court to reach that conclusion, it would not be alone.  Many Courts of Appeals have said as much.  <u>See, e.g.</u>, <u>Garratt v. Knowles</u>, 245 F.3d 941 (7th Cir. 2001); <u>Demery v. Extebank Deferred Compensation Plan</u>, 216 F.3d 283 (2d Cir. 2000); <u>Hampers v. W.R. Grace & Co.</u>, 202 F.3d 44 (1st Cir. 2000).  At least one other Judge of this Court has explicitly so held.  <u>See Hutchison v. Crane Plastics Mfg., Ltd.</u>, 2006 WL 3346117, *4 (S.D. Ohio Sept. 28, 2006)(Graham, J.)("Because ERISA completely preempts state law claims that fall within the civil enforcement provision of ERISA ... actions involving benefits payable from top hat plans are preempted by ERISA"); <u>see also Foley v. American Electric Power</u>, 425 F.Supp. 2d 863 (S.D. Ohio 2006)(Marbley, J.).  And the Court of Appeals for this Circuit has agreed, although it expressed its agreement in a case where

the application of ERISA's remedy provisions to a "top hat" plan was "undisputed," see Peters v. Lincoln Elec. Co., 285 F.3d 456, 467 (6th Cir. 2002).  By contrast, Ms. Hockler has cited no cases to the Court which reach the opposite conclusion.  For all of these reasons, it is recommended that the Court resolve this issue in the defendants' favor and hold that if, indeed, the deferred compensation arrangement in this case is properly characterized as a "top hat" plan, ERISA both preempts and displaces Ms. Hockler's eight state law claims which seek the recovery of benefits allegedly due under that plan.

          B.   Does This Case Involve a "Top Hat" Plan?

The Court's discussion of whether ERISA preemption and displacement applies to "top hat" plans demonstrates that, contrary to Ms. Hockler's claim that whether or not the deferred compensation arrangement in this case is such a plan is irrelevant to the jurisdictional inquiry, the answer to that question is dispositive of the issue.  Consequently, the Court will review the law, including applicable provisions of ERISA, to determine what makes this type of arrangement a "top hat" plan, and whether the deal which Mr. Hockler struck with IAM has those same characteristics.

ERISA contains a definition section, 29 U.S.C. §1002.  In somewhat opaque language, it states that "[t]he term 'employee benefit plan' or 'plan' means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan," see §1002(2)(B)(3), and §1002(2)(A) defines "employee pension benefit plan" and "pension plan" to mean any plan, fund or program established by an employer to the extent that, among other things, it "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond ...."  The actual phrase "top hat plan" is not found in

-11-

ERISA, but has come to mean a pension benefit plan which is exempted from various regulatory requirements of ERISA because, as stated in various subsections of the statute such as §1051(2), it "is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees ...." Using only these statutory sections, it would appear that the deferred compensation arrangement described in Ms. Hockler's complaint would be an employee pension plan because it was established by an employer and resulted in the deferral of income to Mr. Hockler "extending to the termination of covered employment or beyond," and would be a "top hat" plan because it provided deferred compensation only for a select group - here, a group consisting solely of Mr. Hockler - of management or highly compensated employees.

    Ms. Hockler takes issue with that analysis, however. In her view, under a multi-factor test described in decisions such as Kolkowski v. Goodrich Corp., 448 F.3d 843 (6th Cir 2006), the deal which Mr. Hockler reached with IAM is not a "plan" at all. Rather, quoting language that first appears in Fort Halifax, she contends that an ERISA plan requires "an ongoing administrative program to meet the employer's obligation," Fort Halifax, supra, at 11, and that an arrangement that requires only "[s]imple or mechanistic determinations" is not a plan and not subject to ERISA. Motion to Remand, Doc. 9, at 5, quoting Swinney v. General Motors Corp., 46 F.3d 512, 517 (6th Cir. 1995). Thus, she argues that because the arrangement reached between Mr. Hockler and IAM requires IAM to do little more than to send a check to her, it is not an ERISA plan of any kind, "top hat" or otherwise, and there is no remedy available to her under ERISA which could preempt and displace her state law claims.

    This Court has acknowledged and applied the criteria for

deciding if a particular plan which is intended to, and does, provide some type of benefit to an employee, is an "employee benefit plan" within the meaning of ERISA.  In <u>B-T Dissolution, Inc. v. Provident Life and Accident Ins. Co.</u>, 101 F.Supp. 2d 930, 947 (S.D. Ohio 2000)(Rice, J.), the Court found certain plans to be covered by ERISA because, under the formulation of the applicable test set forth by the Court of Appeals in <u>International Resources, Inc. v. New York Life Ins. Co.</u>, 950 F.2d 294, 297 (6th Cir. 1991),

> the documents and surrounding circumstances enable a reasonable person to ascertain all relevant coverage information.  As noted, ... such relevant information includes the intended benefits, the intended class of beneficiaries, the source of financing, and the procedures for receiving benefits.

<u>See also Hughes v. White</u>, 467 F.Supp. 2d 791, 801 (S.D. Ohio 2006)(Marbley, J.), <u>aff'd</u> 298 Fed.Appx. 404 (6th Cir. 2008):

> In determining whether a benefit plan exists under ERISA, the operative test is that developed by the court in <u>Donovan v. Dillingham,</u> 688 F.2d 1367 (11th Cir.1982)(en banc). See <u>WCI</u> [<u>Williams v. WCI Steel Co.</u>, 170 F.3d 598 at 603 n. 3 [6th Cir. 1999] ("The <u>Dillingham</u> test has been adopted by this court," (citations omitted) "as well as by every other circuit.") Under the <u>Dillingham</u> framework, a compensation scheme is governed by ERISA if a reasonable person examining the surrounding circumstances can ascertain: (1) the intended benefits; (2) the class of beneficiaries, (3) the source of financing; and (4) the procedures for receiving benefits.

Using this test, IAM asserts that because the written agreement between itself and Mr. Hockler identifies the intended benefits (an amount of deferred income calculated with reference to its "Net Income Accrual"); identifies the intended class of beneficiaries (Mr. Hockler); identifies the source of financing (by implication, IAM's general revenues, since no other source of

-13-

financing is specified); and identifies the procedure for receiving benefits (the vesting requirement, Mr. Hockler's death or retirement, and the ten-year payout period), it easily qualifies as an ERISA plan.

There would appear to be some tension between the tests cited to the Court by Ms. Hockler and by IAM.  The former appears to focus almost exclusively on the existence of some type of administrative scheme accompanying the plan, while the latter does not seem to take that factor into account at all.  It is also not clear the extent to which other decisions use the factor of an "administrative scheme" in deciding if a deferred compensation plan falls within the scope of ERISA.  For example, in Evanoff v. Banner Mattress Co., Inc., 526 F.Supp. 2d 810, 815 n.1 (N.D. Ohio 2007), the court, citing to Hughes, supra, said that "[d]eferred compensation plans are generally analyzed under the traditional Thompson-Dillingham three factor test ...."  The Evanoff court considered the four factors analyzed in B-T Dissolution and in Hughes as the second part of the test, describing the first inquiry as whether the Department of Labor's "safe harbor" provisions exempt the plan from ERISA - an issue not present here - and the third factor as "'whether the employer "established or maintained" the plan [intending to provide] benefits to its employees.'"  Evanoff, 526 F.Supp. 2d at 816, quoting Thompson v. American Home Assurance Co., 95 F.3d 429, 436 (6th Cir. 1996).  The Court will examine these factors first, to the extent they are implicated here, and, if it appears that the deferred compensation agreement in this case qualifies as an ERISA plan under these criteria, will consider if anything in Swinney might change that result.

Ms. Hockler's motion to remand does analyze the four factors that Hughes and other similar decisions find applicable.  Her position on three of these factors (she does not argue that the

beneficiary of the arrangement cannot be identified) is that:

(1) a reasonable person cannot ascertain the benefits because their calculation is uncertain;

(2) the plan does not identify the source of funding (Ms. Hockler claims that there was an insurance policy in place at one point to fund the payout, but it was canceled and the current source of funding is unclear); and

(3) there is no procedure for obtaining benefits (that is, there is no administrative procedure through which either Mr. Hockler, while he was still living, or Ms. Hockler could apply for benefits, and no appeals process from any denial of a claim).

Ms. Hockler relies heavily for this part of the analysis on Gabelman v. Sher, 2012 WL 1004872 (E.D.N.Y. March 23,2012).  That case involved a former employee's claim for retirement benefits, which he asserted as a claim under ERISA.  The plan in question consisted of a salary continuation agreement under which, if plaintiff remained employed through age 65, would pay him $40,000 per year for the next ten years, payable in 120 equal monthly payments.  Plaintiff's employment was terminated before he became eligible for these benefits, and he sued to recover them.  Using a somewhat different test in effect within the Second Circuit, the district court found that ERISA did not apply because the "plan" provided for automatic rather than discretionary payments, determined arithmetically once the participant became eligible, and it also did not require an individualized analysis of whether the plaintiff qualified for benefits - he either remained in the company's employ until he reached age 65, or he did not.  Further, the company's only ongoing commitment after plaintiff became eligible for benefits was to mail him checks, something the court found inconsistent with an ongoing and particularized discretionary analysis which, the court said, is "characteristic of an ERISA plan."  Gabelman, at *6.  The court also found

noteworthy the absence of any fiduciary to administer the plan, or any trust fund from which plan benefits would be paid, and concluded that the plan simply did not meet ERISA's criteria for an employee benefit plan.  Another district court from that circuit reached a similar result, articulating the Thompson-Dillingham test, but then, along the lines of Swinney, stating that the "touchstone" factor was the creation and existence of an ongoing administrative scheme.  See Eckardt v. Wiebel Tool Co., 965 F.Supp. 357, 362-63 (E.D.N.Y. 1997).

Again, leaving aside for the moment whether there is a "touchstone" test which transcends the four factors making up the heart of the Thompson-Dillingham test, the Court finds that IAM has the better of this argument.  In addition to the fact that the beneficiary of this plan is easily identified, a reasonable person, armed with enough information, should be able to determine the benefits due.  In fact, according to IAM, because the company ceased making any net profit before Mr. Hockler retired, his benefits became fixed before he met all of the eligibility requirements for receiving deferred compensation, and the benefit amount is $135,000.  Although this amount may have been indeterminate when the plan was created, Hughes v. White, supra, held that if the amount of benefits becomes ascertainable at some time during the life of the plan, at least from that point forward, this prong of the Thompson-Dillingham test is satisfied.

Further, absent either an insurance policy or trust fund - both of which, the parties agree, do not exist here - the source from which the benefits will be paid cannot consist of anything other than the general revenues of IAM.  As IAM correctly points out in its memorandum, in Hughes v. White, supra at 801, this Court noted that "courts have routinely held that it may be assumed that benefits are to be paid out of the general assets of

the employer." It is true that the agreement does not specifically state to whom a claim for benefits is to be made, or how to make that claim, so the fourth factor may well favor Ms. Hockler's position, but the other three do not.

Turning at last to the significance of whether there is some type of ongoing administrative scheme in place for dealing with Ms. Hockler's claim for benefits, again, as noted in Hughes v. White, that factor has been deemed important in cases involving severance benefits, but not necessarily deferred compensation. Hughes, supra, citing Kolkowski v. Goodrich Corp., 448 F.3d 843 (6th Cir. 2006). Kolkowski noted that in those types of cases, whether the payment of the severance benefits required some on-going involvement of the employer was a factor, although that test and the Thompson-Dillingham test were described as "different tools that can both be used to determine whether an ERISA plan exists." Kolkowski, 448 F.3d at 850. And one of the factors under the "on-going involvement" test was whether the plan required the employer to make payments over time, and therefore represented "on-going demands on an employer's assets," as opposed to calling for a single lump-sum payment. Kolkowski, at 848. It is significant that the Kolkowski court found an ERISA plan even though there was evidence that the employer "did not comply with ERISA's reporting requirements, there was admittedly no plan administrator at times, and no claims procedure was in place." Id. at 849. The Court also finds instructive the observation made in Emmenegger v. Bull Moose Tube Co., 197 F.3d 929, 935 (8th Cir. 1999), that "no single factor is determinative on this issue ...." It is, rather, the combination of the relevant factors which persuades the Court that it is dealing with an ERISA plan here.

This is, admittedly, not a routine case, and the deferred compensation plan does not resemble the prototypical ERISA

benefit plan.  But it does not have to.  The intent to benefit an IAM employee is clear.  Further, Ms. Hockler's disagreement about how the language in the plan relating to "Net Income Accrual" should be interpreted illustrates the fact that the plan requires either some discretionary calculations to be made, or, at the very least, requires the ongoing involvement on the part of IAM in the payment of benefits.  Given the small size of the company and Mr. Hockler's intimate familiarity with it, the absence of a formal claims procedure does not appear to be a determinative factor.  Finally, the Court is persuaded that the absence of any other designated source of funding - something the parties appear to agree on - creates a reasonable presumption that IAM would fund the payments out of its general revenues or assets.  Again, given Mr. Hockler's position with the company, he would have known that such revenue was the only potential source of payment, as would a reasonable person in his position.  There are therefore enough indicia of a "plan" to bring this arrangement within the scope of ERISA.  That being so, the Court does have jurisdiction over Ms. Hockler's claim for benefits, which, by operation of law, is a claim under 29 U.S.C. §1132(a).

### III.

As the Court noted briefly in the introductory section of this Report and Recommendation, Ms. Hockler seeks to make much of the fact that IAM's counsel denied that the deferred compensation plan was subject to ERISA.  Without deciding whether Ms. Hockler or IAM has the better of the argument about whether Fed.R.Evid. 408 bars the use of that statement in the context of the Court's jurisdictional inquiry because it was supposedly made while the parties were discussing settlement, it suffices to say that none of the factors which the courts have identified for determining if a particular agreement between an employer and an employee is an ERISA plan have anything to do with the employer's subjective

intent.  That is logical; an employer may not avoid the application of ERISA to a plan it creates, assuming the statutory criteria for an ERISA plan are met, just by saying that it does not intend for that law to apply.  The converse is true as well; no amount of intent on the part of an employer can transform a non-ERISA plan into one which is subject to Congress' regulation as expressed in that statute.  The Court has therefore determined the jurisdictional issue without reference to, or reliance on, the statements made by Mr. Cookson about whether ERISA applies here.

IV.

For all of the reasons set forth above, the Court recommends that the plaintiff's motion to remand this case to the Court of Common Pleas of Franklin County, Ohio (#9) be denied.

V.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                                <u>/s/ Terence P. Kemp</u>
                                                United States Magistrate Judge